IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON

WILLIAMS STAPLES,                :

            Petitioner           :

                                 :               JAN 1 4 2015

v.                               :               PER_____
                                                 DEPUTY CLERK

                                 :   3:13-CV-01991

J.E. KRUEGER                     :   (Judge Nealon)

            Respondent           :

## MEMORANDUM

William Staples, an inmate formerly confined at the Schuylkill Federal
Correctional Institution ("FCI Schuylkill") in Minersville Pennsylvania,[1] filed this
pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Doc. 1).
He claims that his due process rights were violated during prison disciplinary
hearings conducted between November 2011 and March 2012.  Id.  Specifically,
Staples challenges the sufficiency of the evidence used to find him guilty and the
procedures applied by the Bureau of Prisons ("BOP").  Id.  He requests that the
incident reports be reversed and expunged from his record.  Id.  The petition is ripe
for disposition and, for the reasons set forth below, will be denied.

## I.   Background

Staples challenges the sanctions imposed for three (3) incident reports;
incident report number 2205908, incident report number 2213904, and incident

_____

[1] Staples is now confined at the United States Penitentiary in Leavenworth Kansas.

report number 2235821.  (Doc. 1).  The loss of good conduct time was imposed as a sanction for each violation.  Id.

### A. Incident Report Number 2205908

On September 2, 2011, Staples was served with Incident Report No. 2205908 charging him with "unexcused absence from an assignment," a Code 310 violation.  (Doc. 5, Ex. 2, Att. D).  The reporting officer stated:

> On Friday, September 2, 2011, at approximately 8:45 am I conducted a random census count of my inmate orderlies. After searching the Education Dept., I was unable to locate Inmate William Norman Staples. I immediately called his living quarters, Unit 3A, in an attempt to find him. The 3A unit officer reported that Inmate Staples was in the housing unit. Inmate Staples then reported back to work on the 9:30 move.

Id.

On September 7, 2011, Staples appeared before the Unit Discipline Committee ("UDC").  Id.  There, he stated: "I checked in at 7:30 am.  Because of my medication, I always went back at 8:30.  When I went back, they said I needed to be there until 10:15 am.  They never told me that."  Id.  The UDC referred the charge to the Discipline Hearing Officer ("DHO") based on the frequency of Staples' disciplinary history.  Id.  Upon conclusion of the UDC hearing, a staff member provided Staples with a copy of the "Inmate Rights at Discipline Hearing" form and a "Notice of Discipline Hearing Before the DHO" form.  (Doc. 5, Ex. 2,

Att. E).  He signed the forms and requested Officer Hair as his staff representative.
Id.  He indicated that he did not wish to call any witnesses on his behalf.  Id.

On November 16, 2011, Staples appeared for a hearing before the DHO; his
staff representative was unable to appear, and he was advised of his options to
postpone the hearing, appoint another representative, or proceed without the
representative.  (Doc. 5, Ex. 2, Att. F).  He waived his right to a staff
representative.  Id.  Staples was informed of his rights before the DHO, and
indicated that he understood those rights.  Id.  Thereafter, he stated:

> I was assigned as an Education Orderly. I reported to work at 7:30
> a.m., and left at 8:30 a.m. I returned to my unit because I was not
> feeling well. I returned to Education after being told by the Officer.
> I was then given a job change from orderly to clerk.

Id.  The report stated that "[n]o procedural issues were cited and no documentary
evidence was provided for consideration."  Id.  The DHO noted a delay in the
hearing because there was no full-time DHO assigned to FCI Schuylkill, but
concluded that the delay did not infringe upon Staples' ability to defend against the
charges.  Id.  The DHO recorded that "Inmate STAPLES understood the rationale
for the delay and he voiced no objections."  Id.  No witnesses were called on his
behalf because he had not requested any witnesses.  Id.

The DHO reviewed the available evidence in the case, consisting in its
entirety of Staples' statement before the DHO and the reporting officer's incident
report, and concluded that "the greater weight of the evidence/some facts . . .

support(s) the finding [that] inmate STAPLES . . . committed the prohibited act(s) of Unexcused Absence From an Assignment, Code(s) 310[.]" Id. In reaching this conclusion, the DHO accorded greater weight to the reporting officer's account because he "derived no known benefit by providing false information." Id.

The DHO sanctioned Staples with the disallowance of seven (7) days good conduct time and the loss of visiting privileges for one (1) month. Id. The DHO reasoned that Staples' actions interfered with the detail supervisor's ability to account for inmates at all times, and an "inmate who cannot be accounted for threatens the security of the institution as well as wastes time and money because staff have [sic] to take the time to find the inmate." Id. Consequently, the sanctions were imposed to "punish [Staples] for his behavior and . . . deter him from this behavior in the future." Id. At the conclusion of the hearing, Staples was advised of his right to appeal. Id.

He appealed the DHO's decision to the Bureau of Prisons ("BOP") Northeast Regional Office. (Doc. 5, Ex. 2, Att. G). The Regional Office did not receive a copy of the disciplinary paperwork associated with this incident report. Id. Therefore, on February 24, 2012, the Regional Office remanded the case back to FCI-Schuylkill to locate the disciplinary record. Id. Thereafter, Staples appealed to the BOP Central Office. Id. On March 28, 2013, the Central Office informed him that it would not address the appeal because the Regional Office had

4

not been provided with the opportunity to review the case again after remanding it

to FCI-Schuylkill. Id.

### B. Incident Report Number 2213904

On September 23, 2011, Staples was served with Incident Report No.

2213904 charging him with "Refusing to obey an order" and "Insolence toward a

staff member[,]" Code 307 and 312 violations, respectively. (Doc. 5, Ex. 2, Att.

H). In this incident report, the reporting officer stated:

> On [September 2, 2011 at approximately 7:10 a.m.] I/M Staples
> approached me near the 3A exit door and told me he hadnt [sic] made
> it to breakfast in time. I told him that mainline was being run under
> fog procedure and the unit had been secured for the last 15 minutes.
> I/M Staples -07725-089 began to argue loudly, stating, "I dont [sic]
> give a fuck I'm entitled to a meal". As I opened the door to let the
> inmates returning from mainline in I/M Staples walked out the door
> saying go ahead and write me up I'm going to eat. I radioed to
> compound to send I/M Staples back, when I/M Staples arrived to the
> unit he again began to argue, and when I told him to go inside he said
> "Fuck you then."

Id.

On September 28, 2011, Staples appeared before the UDC. Id. He informed

the UDC: "I'm not guilty. I picked up toilet paper and brought it back to the unit.

When I tried to go out, the C.O. wouldn't let me leave. He never told me not to go.

I never made that statement to him." Id. The UDC referred the charge to the DHO

based on the frequency of Staples' disciplinary history, and recommended the loss

of good time credit. Id. Upon conclusion of the UDC hearing, a staff member

provided Staples with a copy of the "Inmate Rights at Discipline Hearing" form and a "Notice of Discipline Hearing Before the DHO" form.  (Doc. 5, Ex. 2, Att. I).  He did not sign the forms, but did request Officer Hair as his staff representative.  Id.  He indicated that he did not wish to call any witnesses on his behalf.  Id.

On November 16, 2011, Staples appeared for a hearing before the DHO; his staff representative was unable to appear, and he was advised of his options to postpone the hearing to appoint another representative or proceed without representation.  (Doc. 5, Ex. 2, Att. J).  He waived his right to a representative.  Id. He informed of his rights before the DHO, and indicated that he understood those rights.  Id.  Thereafter, Staples stated:

> I went to get my toilet paper and returned to the unit with it. I tried to go back out and was told I could not. I did exit the unit. The Unit Officer must have called the Compound Officer and I was told by the Compound Officer to go back to the unit. I asked to see a Lieutenants [sic] and was told to see one at mainline. That's why I walked out of the unit. I wanted to see a Lieutenant about going to eat. The Unit Officer did not have the door secured for 15 minutes. It wasn't even secured for five minutes. I never used any profanity.

Id.  The DHO observed that "[n]o procedural issues were cited and no documentary evidence was provided for consideration."  Id.

The DHO noted a delay in the hearing because there was no full-time DHO assigned to FCI-Schuylkill, but concluded that the delay did not infringe upon Staples' ability to defend against the charges.  Id.  "Inmate STAPLES understood

the rationale for the delay and he voiced no objections." Id. No witnesses were called on his behalf. Id.

The DHO reviewed the available evidence in the case, consisting of Staples' statement before the DHO and the reporting officer's incident report, and concluded that "the greater weight of the evidence/some facts . . . support(s) the finding [that] inmate STAPLES . . . committed the prohibited act(s) of Refusing to Obey an Order and Insolence Toward a Staff Member, Code(s) 307, 312[.]" Id. The DHO found that the reporting officer's account was more reliable because he "derived no known benefit by providing false information." Id.

The DHO sanctioned Staples with the disallowance of seven (7) days good conduct time and the loss of phone privileges for one (1) month for his refusal to obey a staff order. Id. For his insolence towards a staff member, he was sanctioned with the loss of one (1) month of commissary privileges. Id. The DHO believed that Staples' "refusal to obey the order of a staff member limited the ability of that staff member to effectively perform their routine duties. To allow . . . . this type of behavior would create chaos and will not be tolerated in a correctional setting." Id. His insolent behavior "indicated disrespect for authority figures . . . [which] threatens the security and orderly running of the facility, as to allow inmates to be disrespectful would create chaos and severely limit staff's ability to control inmate behavior." Id. All sanctions were imposed to "punish [Staples] for

7

his behavior and . . . deter him from this behavior in the future." Id. At the

conclusion of the hearing, he was advised of his right to appeal. Id.

Staples appealed the decision to the BOP Northeast Regional Office; on

February 24, 2012, the Regional Office remanded the case to FCI-Schuylkill to

locate missing disciplinary paperwork. (Doc. 5, Ex. 2, Att. K). On June 1, 2012,

he again appealed to the Regional Office, arguing that he was not present at the

rehearing that the Regional Office had previously ordered. Id. The Regional

Office first noted that it had not ordered a rehearing, but simply remanded to locate

missing paperwork. Id. After reviewing the completed file, the Regional Office

concluded that the DHO had complied with applicable regulations, and the DHO

decision was based upon the greater weight of evidence. Id. The Regional Office

therefore denied Staples' appeal, and informed him of his right to appeal that

decision to the Central Office. Id. Staples did not appeal to the Central Office.

### C. Incident Report Number 2235821

On November 19, 2011, at 8:35 p.m. Staples was served with Incident

Report No. 2235821 charging him with failing to stand for count, a Code 320

violation, interfering with the taking of count, a Code 321 violation, and refusing

to obey a staff order, a Code 307 violation. (Doc. 5, Ex. 2, Att. L). In the incident

report, the reporting officer stated that on November 19, 2011 at 4:10 p.m.:

> While conducting the 4:00pm stand up count, Inmate W. Staples,
> reg#07725-089, failed to stand for count and when given an order to

stand, he refused. Inmate Staples refused to stand and laid motionless
in his bunk for approximately 1 minute until he yelled "It's not 4
o'clock yet", and remained laying in his bunk.

Id.

On November 22, 2011, Staples appeared before the UDC, claiming that he

had been given the incident report twelve (12) hours before the event allegedly

occurred. Id. He further stated that his medication made him tired and drowsy.

Id. The UDC referred the charge to the DHO based on the frequency of Staples'

disciplinary history. Id. Upon conclusion of the UDC hearing, a staff member

provided Staples with a copy of the "Inmate Rights at Discipline Hearing" form

and a "Notice of Discipline Hearing Before the DHO" form. (Doc. 5, Ex. 2, Att.

M). He did not sign the forms, but UDC staff noted that Staples did not wish for a

staff representative, and did not wish to call any witnesses. Id.

On December 16, 2011, Staples appeared for a hearing before the DHO.

(Doc. 5, Ex. 2, Att. N). The DHO checked a box indicating that Staples had

waived his right to a staff representative. Id. He was informed of his rights before

the DHO, and indicated that he understood those rights. Id. He denied the charges

and informed the DHO that he was on medications during the incident. Id.

The DHO report stated that "[n]o procedural issues were cited and no

documentary evidence was provided for consideration." Id. The DHO noted a

delay in the hearing because there was no full-time DHO assigned to FCI-

Schuylkill, but concluded that the delay did not infringe upon Staples' ability to defend against the charges, nor was the delay raised as an issue by Staples. Id. No witnesses were called on his behalf because he had not requested any. Id.

The DHO reviewed the available evidence in the case, consisting of Staples' statement before the DHO, a written statement provided by Staples, and the reporting officer's incident report, and concluded that "the greater weight of the evidence/some facts . . . support(s) the finding [that] inmate STAPLES . . . committed the prohibited act(s) of Failing to Stand for Count, Interfering with the Taking of Count, Refusing to Obey an Order of Any Staff Member, Code(s) 320, 321 307[.]" Id. The DHO found that the reporting officer's account was more reliable because he "derived no known benefit by providing false information." Id.

The DHO sanctioned Staples with the disallowance of thirteen (13) days good conduct time for his Code 320 refusal stand for count. Id. The DHO reasoned that Staples' "failure to stand for count showed his refusal to follow rules and regulations and infringed upon the obligation of the Unit Officer to maintain his area of responsibility[.]" Id. Therefore, he was sanctioned with loss of good conduct time to "punish [Staples] for his behavior and . . . deter him from this behavior in the future." Id. At the conclusion of the hearing, he was advised of his right to appeal. Id.

On January 25, 2012, Staples appealed this decision to the BOP Northeast Regional Office, arguing that the DHO had refused to accept evidence of medication side effects. (Doc. 5, Ex. 2, Att. O). The Regional Office concluded that "there is nothing in [Staples'] medical file which states [he] cannot stand for any reason, nor is there any reason [he] cannot stand for count based on the medications [he was] prescribed." Id. The Regional Office further concluded that the DHO decision was based upon the greater weight of the evidence, and was consistent with regulations. Id. However, the Regional Office found that the alleged violations of Code 307, Refusing an Order, and Code 321, Interfering with Count, were duplicitous with the violation of Code 320. Id. Therefore, the Regional Office partially granted the appeal and remanded the case to FCI-Schuylkill to expunge the sanctions associated with Codes 307 and 321. Id.

On March 30, 2012, Staples appealed to the BOP Central Office. Id. The Central Office noted that the DHO had conducted a rehearing on the matter, and had expunged sanctions imposed for Code 307 and Code 321 violations as directed by the Regional Office. Id. The Central Office denied the appeal, concluding that the DHO decision was based upon the greater weight of evidence and was in accordance with BOP policy. Id.

**Discussion**

11

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres v. Fauver, 292 F.3d 141, 150 (3d Cir. 2002) (citing Asquith v. Dep't of Corr., 186 F.3d 407, 409 (3d Cir. 1999)). Protected liberty interests exist in prison disciplinary proceedings where an inmate loses good conduct time. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). However, "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Id.

### A.    Procedural Rights

Where an inmate is subjected to a disciplinary hearing in which he or she loses good time credit, the following minimum procedural due process rights must be afforded to a prisoner: (1) the right to appear before an impartial decision-making body; (2) twenty-four (24) hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his or her defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67.

Here, Staples argues that he was denied the right to present evidence in all three (3) hearings, was denied staff representation in the hearings related to incident report numbers 2205908 and 2213904, and was not provided twenty-four (24) hours' notice of the disciplinary charge for incident number 2235821.  (Doc. 6).

### 1. *Right to Present Evidence*

Prisoners are generally allowed to present documentary evidence to the DHO in prison disciplinary hearings.  Wolff, 418 U.S. at 566.  Furthermore, the inmate may call witnesses and is entitled to make a statement.  28 C.F.R. § 541.8(f).

Regarding incident number 2205908, Staples alleges that he was not allowed an opportunity to present evidence demonstrating that "he was not aware of the times and days that he was to work[.]" (Doc. 6).  There is no indication that he ever attempted to elicit or introduce evidence of any kind at the DHO hearing.  Rather, the record establishes that "no documentary evidence was provided for consideration." (Doc. 5, Ex. 2, Att. F).  Furthermore, in his statement to the DHO, Staples did not mention that he was unaware of the time or day that he was required to work.  Id.  To the contrary, he acknowledged that he reported to work at 7:30 a.m. as required, but left and returned to his unit because he "was not feeling well."  Id.

13

Staples alleges that in incident number 2213904 he "was not allowed to have documentary evidence to verify that the officer lied about the time in which the door was secured[.]" (Doc. 6). Again, there is no evidence that he ever attempted to present documentary evidence to the DHO, nor any evidence that Staples requested documentary evidence. The DHO again noted that "no documentary evidence was provided for consideration." (Doc. 5, Ex. 2, Att. J).

Regarding incident number 2235821, Staples argues that he was not allowed to present evidence of his medical conditions and medications that may have caused drowsiness. (Doc. 6). Again, he did not present any documentary evidence to the DHO. (Doc. 5, Ex. 2, Att. N). While he did provide both oral and written statements alleging that medication made him drowsy, he did not present any evidence confirming that his medications did in fact cause such side effects. Id. The record reveals that Staples first attempted to present evidence relating to his medication at the appeals level with the Regional Office. (Doc. 5, Ex. 2, Att. G). The Regional Office concluded that the medical records presented did not support his contention that he could not stand during count.[2] Id. Accordingly, the record

---

[2] In furtherance of his argument, Staples cites to 28 C.F.R. § 541.6(b), which provides that a prisoner will not be disciplined for conduct when "as the result of a severe mental disease or defect, [the prisoner was] unable to appreciate the nature and quality, or wrongfulness of the act." However, all of the medications cited to by Staples are used to treat physical impairments, not mental impairments. See, doc. 6. Furthermore, the side effects of these medications are physical, not mental, and he only complains in his brief of physical side effects. Id. As a result, there is

establishes that Staples did not attempt to submit documentary evidence to the DHO and his due process rights were not violated.

### 2. Right to a Staff Representative

Staples further argues that he was denied his right to a staff representative at the November 16, 2011 DHO hearing addressing incident number 2205908 and incident number 2213904. (Doc. 6). Respondents contend that Staples was provided with a staff attorney at the hearing. (Doc. 5).

Prisoners have a constitutional right to a staff representative if he or she is illiterate or if the case involves complex issues. Wolff, 418 U.S. at 570. However, the BOP has administratively expanded this right, and provides that inmates "are entitled to have a staff representative during the DHO hearing process[.]" 28 C.F.R. § 541.8(d). Prior to the DHO hearing, a staff representative "will be available to help [the prisoner] understand the incident charges and potential consequences." 28 C.F.R. §541.8(d)(2).

Regulations further provide that the staff representative "may also assist [the prisoner] by speaking with and scheduling witnesses, obtaining written statements, and otherwise helping" prepare evidence in advance of the DHO hearing. Id. Importantly, if the chosen staff representative is not available for the hearing, the prisoner "may either select another staff representative, request that the hearing be

---

no evidence that a severe mental disease or defect rendered him unable to appreciate the consequences of his actions.

postponed for a reasonable amount of time until [the] staff representative can appear, or proceed without a staff representative." 28 C.F.R. § 541.8(d)(3).

In this instance, it is undisputed that Staples did request a staff representative for his DHO hearing relating to incident number 2205908 and incident number 2213904. See (Docs. 1, 5, 6). But, the hearing did not involve an illiterate inmate and did not involve complex issues; therefore, there was no constitutional due process right to a staff representative. See, Wolff, 418 U.S. at 570. Staples did however have a right to a representative under BOP regulations. 28 C.F.R. §541.8(d).

Despite having the right to a staff representative, Staples does not deny that he waived this right at the DHO hearing. (Doc. 5, Ex. 2, Att. F, J; doc. 6). While he argues that his staff representative failed to meet with him or obtain any evidence, this is irrelevant given the fact that he waived any right to a representative. Having waived his right to a staff representative, he cannot now complain that he was not assisted by a staff representative.

Furthermore, Staples has failed to demonstrate that he was harmed in any way by the failure of a staff representative to meet with him prior to the DHO hearing. He has not listed any witnesses who might have appeared in support of his case, nor did he seek to call any witnesses prior to the hearing. (Doc. 5, Ex. 2, Att. F, J). Similarly, he did not present or request any documentary evidence in

support of his claim. He does not cite to any evidence which a staff representative could have obtained that he would not have been able to obtain himself. Therefore, even if BOP regulations had not been followed in this instance, such error would be harmless. See, Ancrum v. Holt, 506 F.App'x 95, 97-98 (3d Cir. 2012) (applying the harmless error doctrine to prison disciplinary proceedings).

### 3. Twenty-Four Hours' Notice

Finally, Staples argues that he was not provided twenty-four (24) hours' advanced notice regarding incident number 2235821. (Doc. 6). Specifically, he contends that there is no indication as to what time the incident report was delivered to him, and therefore no indication that it was delivered at least twenty-four (24) hours prior to the hearing. Id.

The Incident Report and DHO Report provided by Respondents confirm that Acting Lieutenant R. McIllwain delivered a copy of the incident report to Staples on November 19, 2011 at 8:35 p.m. (Doc. 5, Ex. 2, Att. L, N). The UDC hearing did not occur until November 22, 2011 at 1:35 p.m., approximately sixty-five (65) hours after the incident report was delivered to Staples. (Doc. 5, Ex. 2, Att. L, M). Consequently, he was provided more than twenty-four (24) hours' written notice of the charges, and his due process rights were not violated.

### B.   Sufficiency of the Evidence

Staples also challenges the sufficiency of the evidence relied upon by the DHO in the hearings. (Doc. 6). When a petitioner challenges the sufficiency of the evidence used in the disciplinary hearing, the district court must affirm the finding if there is "some evidence in the record" that supports the finding. Superintendent v. Hill, 472 U.S. 445, 455-57 (1985). The standard is not an exacting one, and the district court is limited to determining if there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Id.

Here, the record reveals at least "some evidence" supporting the DHO's findings and conclusions in each hearing. Specifically, the DHO relied upon the written incident reports created for each incident that detailed the reporting officer's account of the circumstances surrounding the code violations. (Doc. 5, Ex. 2, Att. F, J, N).

Regarding incident number 2205908, the DHO relied upon Officer A. Venturi's account of the events. (Doc. 5, Ex. 2, Att. F). Officer Venturi wrote that he was unable to locate Staples during a random census count of inmates assigned to work at the Education Department. Id. Officer Venturi then contacted the officer on duty at Staples' living quarters, and was informed that Staples was present in the housing unit. Id. Thereafter, Staples was sent back to his work detail. Id.

For incident number 2213904, the DHO relied on the written account of Officer D. Niemynski. (Doc. 5, Ex. 2, Att. J). Staples had informed Officer Niemynski that he had not arrived in time for breakfast. Id. Officer Niemynski notified him that the food mainline was being run under fog procedure, and he could not enter. Id. At that point, Staples began to argue and use profanity. Id. Officer Niemynski wrote that, when the door opened to allow inmates to exit, Staples walked inside without permission. Id. After he was returned by other correction officers, he again began to argue loudly and use profanity. Id.

Finally, in incident number 2235821, the DHO relied upon the incident report completed by Officer R. Yorwarth. (Doc. 5, Ex. 2, Att. N). Officer Yorwarth wrote that, while conducting a stand up count, Staples refused an order to stand. Id. Staples remained motionless on his bed for approximately one (1) minute before yelling "it's not 4 o'clock yet[.]" Id. After making this statement, he remained in his bunk and did not stand. Id.

In each instance, the incident report alone constituted "some evidence." See Moles v. Holt, 221 F.App'x 92, 94 (3d Cir. 2007) ("The sufficiency standard is met where a DHO supports a finding of culpability solely by reference to an incident report compiled by a corrections officer"). The DHO noted that Staples' testimony contradicted the reports created by the correctional officers, but chose to give greater weight to the statements made by the officers because "they derived

no known benefit by providing false information." (Doc. 5, Ex. 2, Att. F, J, N).

Because the incident reports "could support the conclusion" reached by the DHO,

this Court must affirm the DHO's findings. Hill, 472 U.S. at 455-57.

## C.   Sanctions Imposed

Finally, all sanctions imposed by the DHO were within the limits of 28

C.F.R. § 541.3(b).  Staples was ultimately found to have committed four (4)

offenses, all of which were 300-level, moderate severity prohibited acts.  (Doc. 5,

Ex. 2, Att. F, J, N).  Pursuant to DHO regulations, the following are some of the

sanctions available for 300 level offenses:

> B. Forfeiture of non-vested good conduct time up to 25% or up to
> 30 days, whichever is less;
>
> B.1. Disallowance of good conduct time available for the year,
> ordinarily 25% (1-14 days);
>
> C. Disciplinary segregation (up to 3 months); and,
>
> F. Loss of privileges.

28 C.F.R. § 541.3(b).

Here, the DHO sanctioned Staples with the disallowance of seven (7) days

good conduct time and loss of visiting privileges for one (1) month for incident

number 2205908.  (Doc. 5, Ex. 2, Att. F).  For incident number 2213904, the DHO

sanctioned Staples with forfeiture of seven (7) days good conduct time and the loss

of one (1) month of phone privileges and commissary.  (Doc. 5, Ex.2, Att. J).  For

incident number 2235821, Staples was sanctioned with the disallowance of thirteen (13) days good conduct time. (Doc. 5, Ex. 2, Att. N). These sanctions are consistent with the severity level of the prohibited act, and were within the maximum available. See, 28 C.F.R. §541.3(b).

## Conclusion

A review of the record reveals that the Staples' due process rights were not violated, the decision of the DHO is supported by some evidence, and the sanctions imposed were within the statutory maximum. Consequently, the petition for writ of habeas corpus will be denied. An appropriate Order will be entered.

Dated: January 13, 2015                    United States District Judge